IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BENJAMIN B. ANDERSON, | ) | |
| | ) | CIV. S-04-1160 GEB GGH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CITY OF SACRAMENTO; SACRAMENTO | ) | |
| REGIONAL TRANSIT DISTRICT; | ) | |
| M. MOORE, in his individual | ) | |
| capacity as police officer of the | ) | |
| City of Sacramento, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants move for summary judgment on all of Plaintiff's federal claims, arguing that if the motion is granted, Plaintiff's state claims should be dismissed. (Defendants' Motion at 11.) The motion was heard May 2, 2005. The entity Defendants essentially argue they are not exposed to liability for Plaintiff's federal claims because the individually named Defendant, Officer Moore, did not violate any of Plaintiff's federal rights.

/////

/////

/////

1    Plaintiff's claims are based upon what he alleges occurred
2    after he ran two red lights while riding his bicycle.[1]  Plaintiff was
3    subsequently arrested for these infractions, searched incident to the
4    arrest, placed in the rear of the patrol car driven by Officer Moore,
5    and was later released after Officer Moore determined Plaintiff could
6    be given a citation since he had a local California address.

7    Plaintiff argues Officer Moore lacked authority to arrest
8    him under both state and federal law, had no authority to search him
9    following the arrest, and that Officer Moore illegally detained him in
10   the back seat of Officer Moore's patrol car.

11   Plaintiff's counsel indicated during oral argument at the
12   May 2 hearing that the California statute which Officer Moore stated
13   was the basis for Plaintiff's arrest was not a statute under which
14   Plaintiff could be arrested.  But "[t]he validity of an arrest depends
15   upon the objective facts and circumstances of the arrest, not upon the
16   arresting officer's subjective intent."  United States v. Sayetsitty,
17   107 F.3d 1405, 1414 (9th Cir. 1997) (citation omitted).

18   Here, the objective facts and circumstances surrounding
19   Plaintiff's arrest establish that Officer Moore had probable cause to
20   arrest Plaintiff for the California infraction of running a red light.
21   The applicable "state law governing arrests" in the situation involved
22   with Plaintiff's arrest "is relevant to assessing the
23   constitutionality of [Plaintiff's arrest and the] search incident to
24   that arrest."  United States v. Mota, 982 F.3d 1384, 1387 (9th Cir.
25   1993).

26   _____

27       [1]    Facts 2, 3, and 4 in Defendants' Statement of Undisputed Facts
     show that there is no genuine issue of material fact as to whether
28   Plaintiff ran two red lights.  These undisputed facts are supported by
     sworn testimony, in accordance with Local Rule 56-260.

1   Defendants argue that Officer Moore had discretion under
2   California Vehicle Code Section 40305(a) to decide whether Plaintiff
3   should be taken immediately before a magistrate within the county for
4   the infraction of running red lights prescribed in California Vehicle
5   Code Section 21453(a), or issued a citation and released.  Section
6   40305(a) authorized Officer Moore to take Plaintiff to a magistrate if
7   Plaintiff failed to furnish "satisfactory evidence of . . . an address
8   within [California] at which he can be located."
9       It is undisputed that Plaintiff gave Officer Moore an Oregon
10  driver's license in response to Officer Moore's request for
11  identification.  Further, Plaintiff's deposition testimony reveals he
12  admits that when he spoke to Officer Moore, he "[did not] know exactly
13  what [he] said" when responding to Officer Moore's inquiry about
14  whether Plaintiff was just visiting California.  Plaintiff testified
15  "I told him I wasn't going to be here and that I was leaving";  "[that
16  he] wasn't planning on staying"; and "[he] was here temporary. . . ."
17  (Plaintiff's Deposition ("Plf.'s Depo.") at 33:11-17.)  This
18  deposition testimony, considered along with other evidence in the
19  record, reveals there is no genuine issue of material fact on the
20  appropriateness of Officer Moore's decision to take Plaintiff before a
21  magistrate rather than issue him a citation and release him.  Officer
22  Moore's declaration on what Plaintiff told Officer Moore before
23  Officer Moore made his decision to keep Plaintiff in custody reveals
24  that Plaintiff failed to furnish Officer Moore with satisfactory
25  evidence "of an address within California at which he could be
26  located." (Moore Declaration ("Moore Decl.") ¶ 12.)
27      Both Plaintiff's and Officer Moore's sworn averments reveal
28  that Plaintiff failed to furnish satisfactory evidence "of an address

within California at which Plaintiff could be located."  Officer Moore
testified he "was . . . trying to determine where [Plaintiff] was
living so that [he] could issue him a citation," and release him "on a
citation" (Moore Depo. at 30:7-19); but Plaintiff told him he was
visiting in California.  (<u>Id.</u> at 33:1-6.)  Further, Officer Moore
testified that he asked Plaintiff questions regarding whether
Plaintiff had a local address "and [Plaintiff's] response . . . was
really wishy-washy," which caused Officer Moore to be "[un]satisfied
with what he was giving me."  (<u>Id.</u> at 58:21-23.)

Further, Officer Moore declares when he "inquired whether
the Oregon address was Mr. Anderson's current residence address,"
Plaintiff

> informed [Officer Moore] that he was a college
> student in the State of Oregon who was working as
> a delivery man for Attorney's Diversified Services
> in Sacramento for the summer vacation, and that he
> was about to return to Oregon soon to resume his
> studies.
>
> [Officer Moore] then asked Mr. Anderson whether he
> had an address in the Sacramento area through
> which he could be contacted, and he informed
> [Officer Moore] that he did not.

(Moore Decl. ¶¶ 10, 11.)

Since Plaintiff's deposition testimony reveals he "do[esn't]
know exactly what he said" to Officer Moore, and Officer Moore does
remember what Plaintiff said, Plaintiff has not created a genuine
issue of material fact on what he said before Officer Moore decided to
keep him detained.  <u>Dickie v. Baptist Memorial Hospital-North</u>
<u>Mississippi</u>, 146 F.3d 262, 266 n.1 (5th Cir. 1998) (stating that the
mere fact that a witness does not remember an alleged phone
conversation does not create a material fact about its occurrence);
<u>see</u> <u>People v. McKay</u>, 27 Cal. 4th 601, 623 (2002) (officer was not

1   required to accept verifiable oral evidence of identity in connection

2   with lawful custodial arrest; statute plainly put burden of presenting

3   satisfactory evidence of identity on offender, and officer discharged

4   his entire statutory duty by making some inquiry putting offender on

5   notice to produce evidence of identity); see also People v. Monroe, 12

6   Cal. App. 4th 1174 (1993) (officer had discretion to determine what

7   satisfactory evidence of identity was under circumstances).

8           But Plaintiff argues notwithstanding the legality of the

9   arrest under California law, the Fourth Amendment forbids an arrest

10  for a minor traffic offense.  Defendants rejoin that in Atwater v.

11  City of Lago Vista, 532 U.S. 318 (2001), the Supreme Court held that

12  the Fourth Amendment does not forbid such arrests.  The Supreme Court

13  stated:

14              [W]e confirm today what our prior cases have
                intimated: the standard of probable cause
15              "applie[s] to all arrests, without the need to
                'balance' the interests and circumstances involved
16              in particular situations." If an officer has
                probable cause to believe that an individual has
17              committed even a very minor criminal offense in
                his presence, he may, without violating the Fourth
18              Amendment, arrest the offender.

19  Id. at 354 (citation omitted).  This holding in Atwater reveals that

20  Plaintiff's position lacks merit.  Further, since Officer Moore had

21  probable cause to arrest Plaintiff for violation of section 21435(a),

22  Officer Moore's subsequent search of Plaintiff was a lawful search

23  incident to his arrest.[2]  Chimel v. California, 395 U.S. 752 (1969).

24

25

26          [2]    In California, "[a] peace officer . . . without a warrant, may
    arrest a person whenever . . . [t]he officer has probable cause to
27  believe that the person to be arrested has committed a public offense in
    the officer's presence."  Cal. Penal Code § 836(a).  Further, "[c]rimes
28  and public offenses include . . . Infractions."  Cal. Penal Code § 16.

1       Plaintiff also argues that Officer Moore's decision to keep

2  him in custody for twenty minutes following Officer Moore's

3  determination that Plaintiff would be released, since Officer Moore

4  learned Plaintiff had a residence in California, was unreasonable

5  under the Fourth Amendment.  Plaintiff supports this argument by

6  citing to an entry in the Police Call Log ("PCL").  That entry

7  indicates that Officer Nakamura, who had been dispatched to pick up

8  Plaintiff's bicycle, because Officer Moore's cruiser was not equipped

9  to haul it, was told he could leave the scene of the arrest at 1645,

10  since by then Officer Moore had determined that Plaintiff had a local

11  California address.  Plaintiff contends he was not released until

12  1704, and that this 20 minute detention period violated his Fourth

13  Amendment right against unreasonable seizure.  Further, Plaintiff

14  points to Officer Moore's deposition testimony for the apparent

15  purpose of undermining Officer Moore's credibility about the time

16  information was received revealing that Plaintiff could be released.

17  That deposition testimony follows:[3]

18          Q.   At 1704, it looks like that you were able to
             find him in the county system; is that
19           correct?

20          A.   Yes.

21          Q.   Is that when you determined from your
             investigation that the Muir Way address was
22           accurate?  Or what did you find in the county
             system?
23
             Maybe I'm asking too many questions here all
24           at once.

25
   ────────────────────
26       [3]    During the May 2 hearing, counsel agreed that the reference to
27  1704 was Plaintiff's Exhibit B, which is the Police Call Log, or "PCL."
   But the Police Call Log shows that the time next to narrative entries
28  does not reflect the actual sequence of Officer Moore's contacts with
   Plaintiff.

1         A.    I found that he was in our system, that he had no warrants, and that he had an X
2              reference number, which is a county number. . . .

3         Q.    How did you get that information; do you
4              know?

5         A.    Through running his name.

6         Q.    And when you get that information, does it have the Muir Way address on it at all; do
7              you remember?

8         A.    Yes.

9         Q.    Do you know whether Mr. Anderson had told you that he lived at Muir Way before the time
10             1704?

11            In other words, did he tell you that he lived there before you learned that from the
12             computer?

13        A.    He didn't tell me that address.  He told me that he was visiting here.
14

15        Q.    So up and through that 1704 period of time, he didn't tell you anything about Muir Way; is that correct?
16

17        A.    When he was in the back of the car, he talked about it.  But I don't know at what point
18             that was, but it was later on.

19 (Moore Depo. at 32:7-33:11.)

20        Officer Moore declares that while he waited for Officer

21 Nakamura to arrive at the arrest scene to pick up Plaintiff's bicycle, Plaintiff

22        began to open up and communicate more freely with
23        me.  During the course of that discourse, he informed me that his parents, in fact, resided in
24        the Sacramento area, and that it would be possible for him to be reached through a California address
25        which he provided to me.

26        Armed with that new information, I decided that, upon confirmation of the local address information
27        which Mr. Anderson was now providing, and confirmation that Mr. Anderson was not wanted on
28        any warrant of arrest in the California system, I would cite-release him on the traffic violations.

1          With the assistance of the Sacramento Police
         Department computer assisted dispatch system, I
2          was able to make those confirmations, and I then
         prepared a citation and released Mr. Anderson from
3          custody when he signed the citation (albeit not on
         the line provided on the citation form) promising
4          to appear in court on the date set forth on the
         face of the citation . . . .
5
         After Mr. Anderson was released from custody, I
6          spent a few minutes recording notes regarding the
         21453 V.C. violations which I had observed, and
7          regarding my contact with Mr. Anderson, in the
         computer system and on my copy of the citation,
8          and then "cleared" from the traffic stop and
         returned to my patrol duties.
9
10 (Moore Decl. ¶¶ 14-17.)

11     Although it is unclear how long it took Officer Moore to
12 "clear" "from the traffic stop," which is noted on the PCL as having
13 occurred at 1704 hours, Officer Moore's averments that he checked the
14 California warrant system to see if a warrant had been issued for
15 Plaintiff's arrest, and "spent a few minutes recording notes
16 regarding" Plaintiff's violations after Plaintiff was released from
17 custody, have not been controverted.  Therefore, no genuine issue of
18 material fact exists on the reasonableness of Plaintiff's detention
19 under the Fourth Amendment.

20     Further, nothing in the summary judgment record supports
21 Plaintiff's conclusory assertion that Officer Moore subjected him to
22 an unreasonable seizure.  The PCL shows that Officer Moore perceived
23 Plaintiff as having "a poor attitude" about having been stopped for
24 running the red lights, "and [he] was questioning [Officer Moore's]
25 authority."  Therefore, it was reasonable for Officer Moore to place
26 handcuffs on Plaintiff.  Plaintiff's deposition testimony concerning
27 some of his interaction with Officer Moore after Officer Moore told
28 Officer Nakamura that Plaintiff would be released indicates that

Officer Moore just had Plaintiff sit in the back seat of the patrol car while Officer Moore gathered information pertinent to the release decision. Specifically, Plaintiff explains that after Officer Moore spoke to Officer Nakamura, Officer Moore

> got back in the front of the car and just sat there for a little bit, silent like -- well, I don't know why.  But sat there.
>
> And then told me, "Okay, I'm going to -- I'm going to issue you a ticket."  And he wrote me a ticket and told me that I could get out of the car.  He got me out of the car and unhandcuffed me, wrote me out a ticket that wasn't filled out properly.

(Plf.'s Depo. at 21:7-15.)

For the stated reasons, Defendants' summary judgment motion on all of Plaintiff's federal claims is granted.

Since all of Plaintiff's federal claims have been decided, it must be determined whether supplemental jurisdiction should continue being exercised over Plaintiff's state law claims.  28 U.S.C. § 1367(c)(3).

Exercise of supplemental jurisdiction is discretionary. City of Chicago v. Int'l Coll. Of Surgeons, 522 U.S. 156, 172-73 (1997); Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1174 (9th Cir. 2002).  Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state claim where "the district court has dismissed all claims over which it has original jurisdiction. . . ."  "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of litigation, the values of judicial economy, convenience, fairness, and comity.'" City of Chicago, 522 U.S. at 173 (citations omitted).

> [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of

1                 factors to be considered under the pendent
                jurisdiction doctrine--judicial economy,

2                 convenience, fairness, and comity--will point
                toward declining to exercise jurisdiction over the

3                 remaining state-law claims.

4 Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988);

5 see also Bryant v. Adventist Health System/West, 289 F.3d 1162, 1169

6 (9th Cir. 2002) (applying Carnegie-Mellon to supplemental

7 jurisdiction).  "Needless decisions of state law should be avoided

8 both as a matter of comity and to promote justice between the parties,

9 by procuring for them a surer-footed reading of applicable law."

10 United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

11         Since the federal claims have been resolved, as a matter of

12 comity and to allow Plaintiff to prosecute his state claims in a state

13 forum, the state claims are dismissed under 28 U.S.C. § 1367(c)(3) as

14 of the date on which this Order is filed.

15         IT IS SO ORDERED.

16 Dated:  May 9, 2005

17

18                               /s/ Garland E. Burrell, Jr.
                              GARLAND E. BURRELL, JR.

19                               United States District Judge

20

21

22

23

24

25

26

27

28